**Adam T. MILLER, Individually and as Representative of the Estate of Guadalupe P. Miller, et al., Appellants,**

v.

**JONES BROTHERS PAVING AND DIRT CONTRACTORS, INC., Appellee.**

No. 6184.

Court of Civil Appeals of Texas, El Paso.

Sept. 22, 1971.

Rehearing Denied Oct. 20, 1971.

Burnett & Childs, Bob Hoblit, Ruff Ahders, Richard J. Clarkson, Odessa, for appellants.

Schafer, Gilliland, Davis, Bunton & McCollum, Lucius D. Bunton, Ray Stoker, Jr., Odessa, for appellee.

## OPINION

WARD, Justice.

Guadalupe P. Miller died as a result of injuries received in a head on collision between a pickup truck she was driving and an automobile being driven by an employee of Jones Brothers Paving and Dirt Contractors, Inc. The Plaintiffs are the surviving husband and children of Mrs. Miller. The jury found that the deceased failed to keep a proper lookout which was a proximate cause of the collision and that she failed to turn the pickup to the right before the collision which was negligence and a proximate cause of the collision. The jury having also faulted the contractors, the Plaintiffs filed their motion to disregard the contributory negligence group of answers and this was overruled. We affirm the judgment of the trial Court in this appeal by the Plaintiffs-Appellants.

As to the contributory negligence and their related issues, the Appellants have presented only no evidence points. In so doing, they rely primarily on Dewhurst v. South Texas Rendering Company, 232 S. W.2d 135 (Tex.Civ.App. San Antonio 1950, writ ref'd, n. r. e.). In the opposing corner is naturally found De Winne v. Allen, 154 Tex. 316, 277 S.W.2d 95 (1955). This decision, by our affirmance, goes to De Winne.

The legal insufficiency points having raised the question of law, we will consider only the evidence and the inference arising therefrom tending to support the respective findings on contributory negligence and will disregard all evidence to contrary. The deceased had been visiting her sister on a ranch located some distance to the southwest of Marfa. On the morning of the accident, the deceased drove her sister, Sotero P. Morales, in the pickup to Marfa and they traveled the same road on which

the accident later happened. A fourteen mile stretch of the way was being converted from a dirt ranch road to farm to market pavement. At either end of the construction, there were the usual warning signs as to the construction and to drive both slowly and carefully. Near the southwest end of the construction, there was a stretch of the road on which the work had advanced to the extent that it was ready for paving. In this area, some two or three days before the accident, an emulsion mixture 16 feet wide and one mile in length, had been laid down on the south 16 feet of the proposed road. Again, at both ends of this one mile stretch of emulsion, wooden barricades had been erected in front of the emulsion with arrows on the signs diverting all traffic to the north lane of the newly completed subgrade. Between the barricades and along the northern edge of the emulsion, cedar brush had been laid on the emulsion to prevent passing traffic from driving into it. The morning was very foggy and raining. The two ladies in the pickup came to the emulsion and drove past it in the north lane as the sign had directed. They went into Marfa, attended to their business and started on their return journey to the ranch at about 4:00 P.M. The fog had lifted but it was still raining and the road that was under construction was described by everyone as being very muddy and slippery. Mrs. Miller was driving the pickup and when she came to the strip of emulsion, she drove past it in the same north lane as she had done in the morning. The pickup's windshield wipers and parking lights were turned on and the speed of the truck was estimated as being from 20 to 25 miles an hour. Near or at the barricade at the southwest end of the emulsion strip, the accident occurred. Mrs. Morales was talking to, and facing her sister, and did not see the other car until the moment of impact. It is significant that she did not describe any out-cry or excitable turning movement by her sister just prior to the accident. Felmore Brooks, a Jones Brothers employee, who had been working at the southwest end of the construction job, was driving his Valiant carrying other workmen to the north end of the job. His windshield wipers and headlights were on and visibility was described as being less than one hundred feet. He estimated his speed at about 15 or 20 miles an hour and had entered the north lane by the emulsion strip when he saw the pickup approaching him. He estimated the truck to be at about sixty feet and he tried to "whip out" to his right when he saw that the driver of the pickup was not going to pull over. He was able to steer his automobile to the edge of the emulsion and he applied his brakes. Because of the mud or the emulsion to his right which was so slick, his evasive action was to no avail, and the two vehicles collided. In the area of the accident, there was plenty of room for two vehicles going in opposite directions to pass on the northern part of the road on which no emulsion had been laid. Including the northern shoulder, this was some 25 or 30 feet wide and all of it could be used for traveling. The pickup was being operated only some three feet from the edge of the emulsion on its left while the witnesses described that there was plenty of room to the right of the pickup for it to have driven around the Valiant.

No presumption prevails in this state that an injured person is guilty of contributory negligence merely because an accident happened, but on the contrary, the rule is that it will be presumed that the injured person was in the exercise of due care for his own safety when the accident occurred. Dewhurst, supra. The question then becomes one as to whether or not the evidence adduced on trial was sufficient to so overcome the original presumption of the deceased's non-negligence in respect to lookout and failure to turn so that the judgment will stand. Beginning with the weather condition, we find that where there is a heavy rain, or other obvious condition which seriously limits visibility, a driver is held to a greater burden of diligence than where the weather is clear and

the road is dry. Missouri-Kansas-Texas Railroad Co. of Tex. v. Beasley, 321 S.W. 2d 938 (Tex.Civ.App. Eastland 1959, writ ref'd, n. r. e.). The motorist must exercise care commensurate with the situation where his vision is obscured by rain or mist. See the annotation at 42 A.L.R.2d 13. Further, Mrs. Miller knew she was operating over a partial detour as she had been over the road that same morning. She must have known that she was actually driving in the left hand lane in this detour in the face of oncoming traffic and with ample room to move to her right. The pictures in evidence reflect this. We then consider the fact that there is no evidence that Mrs. Miller ever applied her brakes or made any attempt to turn to her right at any time prior to the collision. No undue movement or out-cry was observed by her sister immediately before the crash. Considering all of this, and the Court's charge, there is ample evidence of probative force supporting the findings that Mrs. Miller did not keep such a lookout as a person of ordinary prudence would have kept under the same circumstances, and made no effort to turn to the right. Peck v. Century Concrete Products, Inc., 375 S.W.2d 459 (Tex.Civ.App. Ft. Worth, 1964, writ ref'd, n. r. e.). Having considered all of the Appellants' points including those concerning foreseeability and causation, they are overruled.

■ The Appellants have advanced time and distance factors to overturn the lookout and failure to turn findings. Turner v. Clark, 412 S.W.2d 707 (Tex.Civ.App. Amarillo, 1967, writ ref'd, n. r. e.). Having duly considered them, we do not feel they apply to our situation where the parties approached each other rather slowly with visibility approaching 100 feet. In addition, the lights of the Valiant were on and it is a reasonable inference that the lights or brightness could be seen at an even greater distance.

The judgment of the trial Court is affirmed.